No. 24,760.

August Glahn, *Appellant*, v. Guy Mastin, *Appellee*.

SYLLABUS BY THE COURT.

1. Damages—*Assault and Battery—Self-defense Pleaded—Evidence—Reputation of Plaintiff for Violence and Turbulence—Specific Instances of Plaintiff's Violence Competent.* In an action for damages for assault and battery, where the answer pleaded was self-defense and that defendant had used no more force than reasonably appeared to be necessary to protect himself, evidence of plaintiff's reputation as a quarrelsome, dangerous man, a fighter and a user of dangerous weapons, was competent; and where plaintiff insisted that defendant be required to give specific instances of plaintiff's violence of which he had heard previous to his alleged assault on plaintiff, it was not error to admit evidence of details of such specific instances, particularly where plaintiff endeavored to show that he was not the aggressor in such previous encounters.

2. Same—*Instruction Must Be Considered as a Whole.* It is not a fair basis for reversible error to single out an instruction and show that it lacks one element to make it a complete statement of the law, when it clearly appears that the missing element was repeatedly given in other instructions and where the jury could not have been misled by the criticized instruction.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed March 8, 1924. Affirmed.

*Z. C. Millikin,* of Salina, for the appellant.

*C. W. Burch, B. I. Litowich,* and *La Rue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for assault and battery.

The plaintiff and defendant were adjacent landowners. Defendant's land was occupied by a tenant. It appears that plaintiff had repeatedly cut a telephone line which gave service to the tenant, and threatened to do it again. Plaintiff also took out some fencing between the farms erected by defendant to prevent plaintiff's stock from trespassing on defendant's farm.

On February 2, 1921, the defendant followed the plaintiff into a hardware store in Gypsum City and knocked him down and administered some blows to him after he had fallen. Hence this action for damages.

Plaintiff pleaded the facts of the assault and battery and alleged certain injuries thereby sustained by him.

Defendant answered setting up the plaintiff's meddling with the telephone wires and fencing, and that plaintiff for twenty years had borne the reputation of being quarrelsome, troublesome, a fighter and a user of deadly weapons, of which facts defendant had knowledge; that on the occasion alleged by plaintiff, the defendant spoke to plaintiff about meddling with his telephone line, whereupon the plaintiff became very angry and boisterous and threatening in his manner, and from the motion of his hands he appeared to defendant to be about to strike the defendant and to draw a knife upon him with deadly intent. Defendant alleged that he used no more force than appeared to him to be necessary to protect himself. He also alleged that plaintiff was a malingerer and denied that plaintiff suffered the injuries alleged in his petition.

Jury trial; special findings; general verdict and judgment for defendant. Four of the special findings read:

"2. Did plaintiff attempt to assault the defendant before being struck by him? A. Yes.

"3. If you answer the last question 'yes' state what such attempt consisted, stating the acts constituting the same?

"A. Raising arms, opening coat, reaching toward pocket.

"4. When plaintiff fell to the floor was he rendered unconscious?   A. Yes.

"5. Did defendant after knocking the plaintiff down unjustifiably strike or beat him while he lay on the floor?

"A. No."

Plaintiff appeals, complaining of the extent to which the trial court permitted testimony to be introduced to show the violent and dangerous character of the plaintiff and to prove his reputation in that respect over a period of many years.   He also complains of the instructions.

Touching the first of these, plaintiff concedes that defendant could show he had heard of various previous encounters in which plaintiff had been engaged, but that the details of these encounters could not be proved so as to show that the plaintiff had been the aggressor and the one to blame.   But the testimony as to these previous encounters was introduced because of plaintiff's insistence that they be given rather than the proffered testimony as to plaintiff's reputation for violence and use of knives and other deadly weapons.   The record reads:

"Q. Had you heard of different occasions where he had had fights and had used knives or other deadly weapons?   A. Yes, sir.

"Q. About how many of those matters had you heard of at that time?

"[Counsel for plaintiff]   Just a moment, we ask if that testimony is competent that he give specific instances.

"The Court: Yes, objection sustained, that is, to give specific instances instead of lumping them.

"[Counsel for defendant]   Well, I was getting the number first and then I was going to get it, one after the other.

"The Court: All right."

Defendant then testified as to three specific instances of plaintiff's violence—plaintiff's fight with Hanson, in which he used a wrench; his fight with Kunish, in which he drew a knife; and his fight with McBride, in which he "got his knife and they made him put that up and he tried to get a single-tree off of the wagon and they stopped him there."

There was not only no objection to this testimony but it was developed in response to plaintiff's insistence that specific instances be given of plaintiff's violence which defendant had heard of before his own encounter with plaintiff.   These instances of threatened violence were admitted by plaintiff.   He testified:

"Q. You have had a good deal of trouble down around Carlton, haven't you?   A. Been several people forced trouble onto me.

"Q. Well, you drew a knife on several of them on different occasions, didn't you?  A. Well, I had to act in self-defense.

"Q. Well, there was a boy down near Carlton by the name of Kunish, you had trouble with him?  A. Yes. . . .

"Q. Did you get your knife out?  A. Yes, I got my knife out because I couldn't get him off, and then he thought he would leave me alone. . . .

"Q. Did you have any trouble with Mason?  A. Yes, sir, Mason tried to make me trouble.

"Q. Did you have a fight with Hanson?  A. Yes, sir.

"Q. You had your knife out, didn't you?  A. Well, he pulled out a pair of knucks and I had to defend myself and I hit him with a little wrench. . . .

"Q. Well, you had a fight with McBride, didn't you, working the road?  A. Yes, he hit me in the face, too. . . .

"Q. And then what did you do?  A. Well, he is a big stout fellow and I couldn't handle him bare handed so I reached in my pocket, but I never—

"Q. You got your knife, didn't you?  A. Yes, that is what I did."

Of course these damaging admissions greatly weakened plaintiff's case but the facts thus developed were competent to discredit his testimony and to show that he was quarrelsome and prone to resort to weapons in his quarrels and fights.

The court cannot discern reversible error in the extent to which the details of plaintiff's acts of threatened violence were introduced in evidence.

Complaint is also made because defendant was also permitted to introduce evidence of numerous quarrels and encounters in which plaintiff had been involved over a period of fifteen years, without any showing that defendant had ever heard of them. But it was shown that aside from the specific instances of threatened violence of which defendant had heard, he knew the general reputation of the plaintiff for violence and for drawing weapons in his quarrels and fights, and evidence to that effect was competent. In *The State v. Burton*, 63 Kan. 602, 66 Pac. 633, where the defense to a charge of homicide was self-defense, the exclusion of such evidence was held erroneous. The court said:

"Information conveyed before the killing to a party on trial for murder, who justifies on the ground of self-defense, that the deceased was a violent and turbulent man and accustomed to go about armed, is admissible, whether the informant gained his knowledge from general reputation of the deceased or from personal observation of his specific acts. The rule that bad character in the respect mentioned can be established only by general reputation of the deceased in the community has no application to the admission of such testimony. It is competent for the purpose of determining the state of mind of the accused at the time of the homicide, and whether he was induced to

believe, in good faith, that he was in imminent danger of death or great bodily harm at the hands of the person killed." (Syl. ¶ 3. See, also, *The State v. Long,* 103 Kan. 302, 307, 175 Pac. 145; *The State v. Allen,* 107 Kan. 407, 412, 413, 191 Pac. 476.)

Error is also assigned in the trial court's instructions to the jury. The defendant's testimony was to the effect that when he spoke to the plaintiff about molesting the telephone line, plaintiff "got very wrathy . . . and opened his coat. . . . I thought he was going after a weapon and I hit him." Plaintiff fell and defendant hit him three times as he lay on the floor. The jury found that plaintiff was stunned by the first blow or by the fall, but there was no evidence that defendant knew that fact. The court's instruction on this point, which the plaintiff complains of, reads—

"No. 8. If you find from the evidence that the defendant was justified, under these instructions, in striking the first blow, the plaintiff cannot recover any damages on account of injuries he received from said first blow. If, however, you further find from the evidence that after striking the first blow the defendant further struck the plaintiff and used more force than appeared to him at the time to be necessary for his defense and protection, then he would be liable for such injuries as resulted from the striking of subsequent blows only."

Counsel for plaintiff say:

"This is a remarkable statement of the law. Under these instructions it is sufficient if the necessity to beat the unconscious man appeared to the defendant. When has such come to be the law? An accused may act upon appearances, but the appearances must be such as to present reasonable grounds to a reasonable man. The rule stated in the Howard case, 14 Kan. 173, has been frequently reiterated. It was there said, 'The rule is that if the defendant had reasonable grounds to apprehend that he was in imminent danger he was justified in defending himself.'"

The criticism is hardly fair. In earlier instructions the court had carefully and correctly stated the law of self-defense. The jury were instructed:

"No. 4. . . .. Before a person is justified by assaulting another he must reasonably believe that he is in imminent danger of receiving bodily harm at the hands of such person and that it is necessary for him to resort to force to protect himself from immediate injury. He must act in good faith and as a reasonably prudent man would act under like circumstances. He must act on reasonable grounds and not from mere fear that he is about to be struck, or out of malice."

This statement of the law, which accords with plaintiff's theory of it, was repeated and elaborated in instructions Nos. 6 and 7, and

it was unnecessary to reiterate it in instruction No. 8, since there the court was merely laying down the rule between a possible justification for the first blow, where the later blows might not be justifiable. Instruction No. 11 reads:

"The jury are further instructed that even if you should find from the evidence that plaintiff was of a quarrelsome character at or prior to the time of the assault, and that defendant had notice thereof, this would not alone justify defendant in striking or beating the plaintiff. The evidence as to plaintiff's character can only be considered by you in determining whether reasonable grounds existed to justify the defendant in striking the plaintiff in self-defense."

When all the instructions are read and considered together, it is perfectly clear that the criticism of No. 8 is ill-founded. The jury could not have been misled by the want of the qualifying element of reasonableness of conduct in instruction No. 8. That element had been abundantly emphasized in other instructions.

There is no error in the record of sufficient gravity to disturb the judgment.

Affirmed.

BURCH, J., not sitting.