No. 25,215.

IRVIN B. KNOCK, *Appellee*, v. THE SECURITY BENEFIT ASSOCIATION, *Appellant*.

SYLLABUS BY THE COURT.

1. FRATERNAL BENEFIT INSURANCE—*Nonpayment of Dues—Time When Back Dues Were Paid—Health of Assured When Reinstated—Questions for Jury —Instructions.* In an action to recover on a fraternal beneficiary certificate of insurance, the record examined, and held to contain sufficient evidence, though meager and not very convincing, to present a jury question of fact as to whether the assured was in good health at the time his delinquent assessments were paid so as to reinstate him from suspension shortly before he died.

2. SAME—*No Error in Instruction.* Error assigned on an instruction to the jury, examined, and not sustained.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed April 5, 1924. Affirmed.

*John Bertenshaw, Kirke C. Veeder,* both of Independence, and *A. W. Fulton,* of Chicago, Ill., for the appellant.

*S. H. Piper, W. R. Hobbs,* and *W. B. Grant,* all of Independence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover on a fraternal insurance certificate. In January, 1921, the defendant issued to Cecil Knock a certificate of insurance which provided, among other appropriate recitals and reservations, that if the holder at the time of his death was a member of the defendant's fraternal society in good standing, it would pay to Irvin B. Knock, father of the assured, the sum of $1,000.

To maintain his good standing it was necessary that the assured should make certain payments of assessments due on the first day of each month and that these should be paid not later than the last day of each month; and if the assured fell in arrears in his payments of assessments he would be suspended; but if he would pay up such arrearages within sixty days and if he were in good health at the time of such belated payments he would be reinstated.

Cecil Knock died on December 10, 1921. Defendant resisted payment of the insurance on the ground that the assured was suspended for nonpayment of his October assessment, and that a pay-

ment of the assured's October, November and December assessments, by some person in his behalf, made on December 6, 1921, four days before he died, was made at a time when he was not in good health and was ineffective to reinstate him and revive his lapsed insurance.

The evidence tended strongly to support the defense, and the evidence for the plaintiff was meager and not very convincing. However, the jury returned a verdict for plaintiff, and answered special questions, viz.:

"Q. 1. What disease, if any, caused the death of Cecil Knock? A. 1. Typhoid fever.

"Q. 2. Was Cecil Knock sick on December 6th, 1921? A. 2. Yes.

"Q. 3. Was the deceased operated on for perforation of the bowels, and if so, when? A. 3. Yes, Dec. 6th.

"Q. 4. If you answer the last question in the affirmative, what was the cause of such perforation? A. 4. Typhoid.

"Q. 5. How long does typhoid fever run before perforation of bowels takes place? A. 5. One day or any time thereafter.

"Q. 6. When was the deceased's October 1921 assessment paid to the financier of defendant company at Independence, Kansas? A. 6. Nov. 30, 1921.

"Q. 7. At the time this assessment was paid, had said financier been informed, or did she know of the illness of said Cecil Knock? A. 7. No."

Judgment was entered accordingly.

Defendant appeals, presenting an abstract of 100 pages and an exhaustive brief in support of its assignment of errors; but it all narrows down to this: Can this court say from the record that there was no jury question to be determined?

The court is constrained to hold that this controlling question must be answered in the negative. There was some evidence that the dead man's assessments were paid on November 30. The defendant's receipt for payment of assessments for October, November and December bears that date. A photographic copy of the receipt is presented to us and it might seem that the date, 11/30, is written over another date which is only partially erased, and which a jury might discern to have been originally 12/6, meaning December 6, as the date of payment; and that would correspond with the testimony of the witness who swore he paid the overdue assessments on December 5 or December 6, four or five days before the assured died. But the date of payment was a jury question, and the weight to be attached to the erasure in the receipt, if there was an erasure, and what were the partially erased underlying figures

Knock v. Benefit Association.

in that date line, if there were any there—these were jury questions. The receipt was found in the custody of the defendant's local financier. It had never been in the possession of any one who would presumably have had an interest in altering the date of payment so as to favor the plaintiff. The local financier who issued the receipt testified that she had no independent recollection of the day when the payment was made, but that her records showed that payment was made on November 30, 1921. The jury's finding of fact on this point, therefore, did have some substantial evidence to support it. So, too, as to the finding of the assured's good health at the time the overdue assessments were paid; such a finding is inferred by the general verdict. While the evidence of defendant's witnesses showed quite persuasively that the assured was ailing of his fatal malady for some days before the assessments were paid, and that his kinsman only paid them the day the assured was taken to the hospital, being prompted to do so by his wife because of the illness of the assured; yet there was some evidence—not much, but enough to make it a jury question, that on Friday, December 2, the assured had been out hunting rabbits, and that on that day he made no complaint about being sick and appeared to be enjoying good health. Plaintiff testified that the assured became sick on Saturday night, December 3, and that he was taken to the hospital the following day. Here again, this court can only say what is perfectly obvious on this controverted matter—it was a jury question.

Fault is found with one of the instructions to the jury in that it assumes that the assured had been reinstated. Other instructions fully covered the question of reinstatement. Defendant's criticism of the instruction is without merit. (*Burgess v. Center Township,* ante, 346, 349, 223 Pac. 475; *Glahn v. Mastin,* ante, p. 557, syl. ¶ 2, 224 Pac. 68.)

And that is all there is to discuss in this lawsuit. This court does not have the broad plenary power of the district court to set a verdict of a jury aside when there is some substantial evidence—though little worthy of credence—to support the verdict. (*Butler v. Milner,* 101 Kan. 264, 266, 267, 166 Pac. 478; *Shore v. Shore,* 111 Kan. 101, syl. ¶ 1, 205 Pac. 1027; *The State v. Frey,* 111 Kan. 798, 802, 208 Pac. 374.)

There is no error in the record which would permit a reversal of this case without unsettling the established limits of appellate jurisdiction; we have therefore no alternative but to affirm the judgment.