No. 47,484

Loren Carrick, *Appellee and Cross-appellant,* v. B. J. McFadden, *Appellant and Cross-appellee,* and Ronald McFadden, *Cross-appellee.*

(533 P. 2d 1249)

Opinion filed April 5, 1975.

*Edwin P. Carpenter*, of Topeka, argued the cause, and *Tom Kelley* and *Raymond L. Dahlberg*, of Turner, Chartered, of Great Bend, and *Lossen G. Pike*, of Ashland, were with him on the brief for the appellants.

*Harold K. Greenleaf, Jr.*, of Smith & Greenleaf, of Liberal, argued the cause, and *Virgil Severe*, of Ashland, was with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

FONTRON, J.: This is an action to recover damages for personal injuries resulting from an assault and battery upon the plaintiff, Loren Carrick. The defendants originally were B. J. McFadden and Ronald McFadden, father and son. The jury returned a verdict in plaintiff's favor for actual and punitive damages against B. J. McFadden only, the court having previously dismissed the case as to Ronald McFadden. Judgment was entered on the verdict against B. J. McFadden and he has appealed. The plaintiff has filed a cross-appeal.

The lawsuit grows out of an incident occurring February 13, 1972, on land owned by B. J. McFadden, a pipeliner and farmer. The plaintiff and three companions were hunting coyotes that day with their dogs, traveling in two trucks. Loren Carrick and a retarded youth were riding in the Carrick truck, in the back end of which the hunting dogs were caged, while Lewis Zane and Lemoin Carrick, the plaintiff's brother, were in the other truck, belonging to Mr. Zane. None of the hunters were armed.

What occurred during the incident was sharply disputed. According to plaintiff and his two witnesses, Lemoin Carrick and Lewis Zane, they thought the land onto which they drove belonged to Mr. Jarboe, whose foreman had given permission to hunt thereon. The testimony of all three was to the effect the land was in wheat stubble and that it was not fenced or posted in any way. They saw no growing wheat or cattle on the north part of the section where they were, although the McFaddens said part of the section was in wheat, was being pastured by their cattle, and that many of the cows were calving.

All witnesses testified that Loren's truck was first in the field, followed by Zane's, and that the McFaddens followed them onto the land. Mr. Zane and Lemoin Carrick said that as the McFaddens pulled even they yelled for Zane to stop; that Zane stopped his truck and as the McFaddens drove on he radioed ahead to

Loren that a guy was coming and to stop; and that Loren then turned around and started back to meet the McFaddens. Zane, Loren and Lemoin all testified that the two trucks stopped opposite each other; that B. J. McFadden immediately got out of his truck with a rifle; that he went over to Loren's truck and struck Loren on and about the head with the rifle barrel. The plaintiff himself testified that after being struck on the temple he recalled nothing further about the events of that afternoon.

Lemoin Carrick and Lewis Zane testified that on seeing Loren attacked they drove to the scene; that as they reached the two trucks B. J. McFadden had the door of Loren's truck open and was choking Loren as he sat in the truck; that Ronald had possession of the rifle by that time and told them not to come any further. Despite this warning Lemoin and Zane hurried over to the truck and attempted to pull B. J. McFadden away from Loren but were unable to do so until Ronald finally yelled at his father to stop. B. J. McFadden then loosened his strangle hold, picked up his rifle, cursed the lot of them and told them all to get off his place and stay off. Whereupon, all of them left without further ado. Loren had to be carried into his home when he arrived there.

The version given by the McFaddens was entirely different. They testified in substance that B. J. McFadden told plaintiff, when the two trucks stopped, that he did not allow hunting and he wished they would get off his property; that plaintiff thereupon got out of his truck, grabbed B. J.'s arm, which was sticking out the window of his truck and called him some nasty names; that as Mr. McFadden fell from his truck and onto the ground he grabbed the rifle (apparently unloaded), which he was carrying in the truck, and jabbed it into plaintiff's stomach; that a struggle between B. J. and Loren ensued over the gun, during which the butt of the gun hit Loren's chin; and that Mr. McFadden threw the gun down and shoved and pushed the plaintiff back into his truck. Ronald testified that he picked up the gun and held it, and when the other man came up he told him to stop and stand back so there could be a fair fight—that it wouldn't be two on one.

There is a good deal of evidence, including medical, that Loren Carrick sustained considerable physical and emotional damage from his injuries, but the same need not be spread on the pages of this opinion.

B. J. McFadden lists four points on appeal but briefs the last

point but briefly. His first claim of error pertains to the exclusion of evidence relating to plaintiff's alleged character or propensity for violence.

In a pretrial order the court ruled that since the parties to the altercation were strangers to each other, evidence on behalf of either party as to the violent propensities or character of the opposing parties was not admissible, and that evidence of prior fights or altercations would not be admitted. At the beginning of the trial defense counsel made an oral proffer that five witnesses, whom he named, had been subpoenaed who would testify as to previous fights in which the Carricks had been engaged and as to their character and propensity for violence. At this time the court reiterated its ruling contained in the pretrial order.

In our opinion the court erred in concluding that none of the proffered testimony was admissible.

The following statutes are pertinent to the point in issue:

K. S. A. 60-446. "When a person's character or a trait of his character is in issue, it may be proved by testimony in the form of opinion, evidence of reputation, or evidence of specific instances of the person's conduct, subject, however, to the limitations of sections 60-447 and 60-448."

K. S. A. 60-447. "Subject to section 60-448 when a trait of a person's character is relevant as tending to prove his conduct on a specified occasion, such trait may be proved in the same manner as provided by section 60-446, except that ( a ) evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible. . . ."

K. S. A. 60-448. "Evidence of a trait of a person's character with respect to care or skill is inadmissible as tending to prove the quality of his conduct on a specified occasion."

In his commentary on 60-447 of his work, Kansas Code of Civil Procedure, annotated, p. 439, Judge Spencer A. Gard says:

"The opening words of this section, 'when a trait of a person's character is relevant' etc. save the section from changing the established law on the subject of relevancy. For instance, in civil cases evidence of character is usually not available as proof of conduct on a given occasion. There are exceptions, however, to which the rules of this section are applicable. In the assault and battery case character evidence is admissible on the issue of who was the aggressor. Glahn v. Mastin, 115 K 557, 224 P 68.

"Where personal violence is involved reputation as peacable [sic] and law-abiding citizen is admissible. Revere v. Revere, 115 K 575, 223 P 1103."

This construction of the statute accords with the general rule on the subject. In 1 Jones on Evidence, 6th Edition 1972, § 4:40, the prevailing rule is phrased:

"In a civil action for assault and battery evidence of reputation and character of the parties for peace and quiet is competent, not to establish guilt or innocence, but to resolve the question as to which was the aggressor where that is disputed and defendant pleads self defense." (p. 462.)

In an annotation found in 154 A. L. R. 121, Evidence—Reputation—Assault, § IIb, p. 134, the rule is formulated in these words:

"Where the evidence is conflicting on the point as to which party was the agressor, evidence of plaintiff's character or reputation for turbulence and quarrelsomeness is admissible, apparently without regard to whether the defendant has pleaded self-defense, and even if the defendant did not know of such character or reputation. . . ."

Although we find no case squarely in point from our own jurisdiction, the early case of *State v. Spendlove*, 44 Kan. 1, 24 Pac. 67, appears to come very close. In that case the defendant requested the court to give the following instruction:

" 'If the evidence leaves you in doubt as to what the acts of the deceased were at the time, or immediately before the killing, you may consider the *threats and character of the deceased* in connection with all the other evidence, in determining who was probably the aggressor.' " (p. 5.)

On appeal this court held it was reversible error to refuse the instruction. See, also, *Glahn v. Mastin*, 115 Kan. 557, 224 Pac. 68.

As we have already noted, the evidence as to how the violence began was highly conflicting. Members of each group charged members of the other group with initiating the turbulence—with being the aggressors. Hence, reputation or character was relevant on the issue of who was the aggressor; who started the fight. In our judgment the trial court erred in excluding testimony offered on that point.

The plaintiff questions the sufficiency of the proffer made on behalf of the defendants. The governing statute is K. S. A. 60-405, which provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

This provision first appeared on the statute books as a part of the Code of Civil Procedure (L. 1963, ch. 303) to become effective January 1, 1964, and this court has had few occasions to consider it. However, Judge Gard, in his work on the code, has this to say concerning the requirements of the section:

". . . A formal offer of proof is not necessary if the basis of the objection to the exclusion of the evidence is made known in such manner as to indicate the evidence which is desired. . . .

". . . At the trial stage this section makes it necessary that the appellant make an adequate record of what he wants to introduce, no particular form being required. No formal offer is necessary if some other method of making the record is as good or better." (p. 368.)

In *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 529 P. 2d 104, we said of a proffer made in that case:

". . . The proffer was in keeping with the requirements of K. S. A. 60-405, that the proponent of the excluded evidence make known the 'substance' of the expected evidence." (p. 823.)

It is true that counsel made the proffer orally rather than in question and answer form. However, what counsel said in making the proffer was recorded verbatim and the same is included in the record before us. The proffer informed the court that the witnesses would testify generally as to the character of the plaintiff being violent. Thus the substance of their expected evidence going to the plaintiff's character was made known, even though evidence of specific instances not resulting in convictions is not made admissible by 60-447. While the proffer might well have been made less broadly, we are not prepared to say it was insufficient under the circumstances of this case.

Besides, the trial court having already ruled in the pretrial order that character evidence would not be admitted since the parties were strangers, any proffer might well have been only a futile gesture. In *Aspelin v. Mounkes*, 206 Kan. 132, 476 P. 2d 620, we said of a similar situation:

"Appellants failed to make a proffer before the trial court of that which they expected to show by the deposition; however, in view of the reason given in sustaining the objection any proffer may well have been futile. . . . . (p. 137.)

The plaintiff says in his brief that when the judge ruled on the McFadden proffer he had before him depositions from three of the witnesses whose testimony was proffered, and that their depositions contained no such opinions as defense counsel had stated at the time of the proffer. However, neither the depositions nor their substances are found in the record. Thus they are not available for our consideration. Furthermore, two of the witnesses named in the proffer had not even been deposed.

The second point advanced by the defendant is this: Evidence

going to the good character of Mr. McFadden was erroneously excluded. We do not read the record that way. The court's ruling reads as follows:

"Now, character testimony that merely shows the people or parties to be fine, upright citizens, of a peaceful nature, and such, will be admissible to the extent that it becomes relevant in the course of the trial."

So far as the record is concerned no evidence going to B. J. McFadden's good character was ever offered at the trial.

For his third point, Mr. McFadden argues the court erred in instructing the jury as to the allowance of punitive damages. We believe the argument lacks merit. There was an abundance of testimony introduced by the plaintiff which if believed, as apparently it was, disclosed a willful, wanton and malicious attack on Loren Carrick at the time he was sitting in his truck.

It is the general rule that exemplary damages are recoverable in an action for personal injuries based upon tortious acts which involve elements of malice or a wanton and reckless disregard of the rights of the plaintiff. (22 Am. Jur. 2d, Damages, § 243, p. 334.) In *Sweaney v. United Loan & Finance Co.*, 205 Kan. 66, 74, 468 P. 2d 124, this court said:

". . . Generally, the intentional doing of a wrongful act with full knowledge of its character, and without cause or excuse, is malicious and warrants an award of exemplary damages. . . ."

We have specifically held that damages are recoverable for an unlawful, forcible and malicious battery, even though the wrongful act might also have been in violation of a criminal statute. (*Wiley v. Keokuk*, 6 Kan. 94; *Titls v. Corkins*, 21 Kan. 722; *Jockers v. Borgman*, 29 Kan. 109; 22 Am. Jur. 2d, Damages, § 246, p. 338.) Malice may be implied from the intentional doing of a wrongful act. (*Reynolds v. Guthrie*, 145 Kan. 315, 321, 65 P. 2d 272.)

The defendant complains that no evidence of his financial condition was admitted at the trial, but the record does not show that evidence of this kind was offered. We are cited to no rule of law requiring that evidence of the defendants' financial worth be introduced before an issue of punitive damages may be submitted to the jury. This court has said that where exemplary damages are properly in issue, evidence going to the defendant's financial condition is admissible. (*White v. White*, 76 Kan. 82, 87, 90 Pac. 1087; *Hammargren v. Montgomery Ward & Co.*, 172 Kan. 484, 499; 241 P. 2d 1192.) Our rule accords generally with that which prevails in a

majority of jurisdictions. (9 A. L. R. 3d: Anno., Punitive Damages —Financial Worth, pp. 695-701.) However, we have not gone so far as requiring evidence as to defendant's wealth and see no good reason for extending the rule.

As his fourth point the defendant somewhat casually mentions the subject of remittitur, without pointing out in what respects or in what amount the verdict is excessive. However, we need spend no further time on this point since the case must go back for a new trial.

As we have previously stated, the plaintiff has filed a cross-appeal. The notice states his cross-appeal is "from the Order on Plaintiff's Motion for costs involved in the taking of certain depositions, where Defendants witnesses failed and refused or were absent from such scheduled and noticed depositions."

K. S. A. 60-2103 (*b*) reads in part:

"The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, . . ."

This provision of the present statute has not been subjected to construction, but under its predecessor, G. S. 1949, 60-3306, this court was consistent in holding that rulings which had not been specified in the notice of appeal presented nothing for appellate review. (See 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 116.) In Gard, Kansas Code of Civil Procedure, § 60-2103 (b), p. 771, the following commentary is found:

"The requirements for the content of the notice of appeal are substantially the same as under the former procedure. . . ."

We shall therefore confine our consideration of the cross-appeal to the matter stated in the notice.

The record reveals that counsel for the McFaddens gave notice that on June 20, 1973, Dr. Lyle Glenn, Eddie Bennett and Chester Daley would be deposed at 10 a. m. in Coldwater, Kansas, and Le-Roy Shelton would be deposed at 1 p. m. of the same day. At the appointed hour Dr. Glenn was out of town, Eddie Bennett was incarcerated in a Colorado penitentiary and Chester Daley had departed this life nine months previously. The day was not entirely wasted, however, since Dr. Glenn's office secretary consented to be deposed for the purposes of obtaining medical records pertaining to Loren Carrick and of obtaining her personal opinion as to the character of that gentleman. Mr. Shelton, it turned out, was still in the community, custom cutting wheat, and his deposition was

also taken—somewhat ahead of the time it had been originally scheduled.

Carrick's motion to assess costs was taken up just before McFadden's motion for new trial was argued. At this time the trial court observed that the firm representing defendants was careless in scheduling the depositions and "this practice constitutes some sort of harrassment and is an abuse of discovery" but ruled that inasmuch as two depositions had been taken on the day in question, nothing more would be done at that time "except to censure the firm for their activity along these lines. . . ."

We can understand the concern of an attorney who has responded to a notice to take a deposition when he discovers, on arrival at the appointed place, the opposing counsel has not done his homework, and that the witnesses to be deposed are not on hand. In western Kansas distances are especially long and tiresome, and responding to a false alarm can be expensive as well as physically wearing. However, the trial court's warning should have sufficed to take care of the particular situation before it, and we will not fault the court in failing to assess costs under the circumstances.

The judgment of the trial court is reversed as to the appeal and affirmed as to the cross-appeal, and this cause is remanded with directions to grant a new trial.

It is so ordered.

FROMME, J., not participating.