**ANTHONY CLARKE, Plaintiff**

v.

**JOSEPH BRUCKNER, Defendant**

Civil No. 1980/146

District Court of the Virgin Islands

Div. of St. Croix

March 30, 1982

MARK L. MILLIGAN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

BRITAIN H. BRYANT, ESQ., Christiansted, St. Croix, V.I., *for defendant*

O'BRIEN, *Judge* .

## MEMORANDUM OPINION

The plaintiff in this case ("Clarke") was awarded $15,000.00 in compensatory damages and $35,000.00 in punitive damages against the defendant ("Bruckner") after a three-day trial March 8–10, 1982, before a jury. Bruckner now moves the Court in dual fashion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. He makes a number of contentions which will be taken up in turn. For the reasons cited in this decision, the motions will be denied.

## I. JUDGMENT NOTWITHSTANDING THE VERDICT

Bruckner moves initially for judgment notwithstanding the verdict pursuant to Rule 50(b) of Fed. R. Civ. P. He preserved this right during the trial, by the appropriate motions at the close of plaintiff's case, and the close of all of the evidence. During the trial, each of the parties bore the burden of proof on different issues. Clarke had the burden of showing the elements of the battery and the false imprisonment alleged, as well as the further proof necessary for punitive damages. Bruckner had the burden of showing self-defense as an affirmative defense, and further that any "imprisonment" of Clarke was necessary to keep him from inflicting harm on Bruckner.

Therefore, as the moving party under Rule 50(b), Bruckner is also viewed as bearing the burden of proof on the aforementioned issues.

 Entering a judgment notwithstanding the verdict for the party having a burden of proof is rare and reserved for extreme circumstances. Fireman's Fund Insurance Co. v. Videfreeze Corp., 13 V.I. 382, 393 (3rd Cir. 1976), and cases cited therein. Since the motion and memorandum filed by Bruckner casts his argument in terms of his view of the overwhelming nature of the proof in his favor on the self-defense issue, it is clear that he argues that he met his burden of proof on that affirmative defense. A strong and difficult standard must be met by Bruckner in that motion, i.e., that there is insufficient evidence to permit any different finding than that sought by his motion. Mihalchak v. American Dredging Co., 266 F.2d 875, 877 (3rd Cir. 1958), cert. den., 361 U.S. 901 (1959). And, of course, the evidence must be viewed in the light most favorable to the nonmoving party. Continental Ore Co. v. Union Carbide & Carbon Co., 370 U.S. 690 (1962); Dovberg v. Dow Chemical Co., 353 F.2d 963, 968 (3rd Cir. 1965), cert. den., 384 U.S. 907 (1966).

 At least two factors are outside the Court's review in deciding such a motion—the credibility of the evidence and the weight of it. Brady v. Southern Railway Co., 320 U.S. 476, 479–80 (1943); Burchill v. Kearney-National, 468 F.2d 284 (3rd Cir. 1972). It is the function of the trier alone, in this case the jury, to evaluate contradictory evidence and to draw inferences thereform. Continental Ore Co., supra, 370 U.S. at 700–01.

When the evidence is viewed in this light, as will be seen in the next part of this opinion, the evidence was clearly susceptible of a different result than that sought by Bruckner. Accordingly, his motion for judgment notwithstanding the verdict will be denied.

## II. MOTION FOR A NEW TRIAL

Bruckner has simultaneously moved for a new trial pursuant to Rule 59(a) Fed. R. Civ. P. He cites a number of grounds for the motion, that (a) the verdict was against the weight of the evidence; (b) evidence was admitted which should not have been; (c) evidence was excluded which should have been admitted; (d) the jury should not have been permitted to view the scene; (e) the Court's instructions were erroneous and confusing; (f) the verdict form was incorrect as a matter of law; and (g) a mistrial should have been granted when the jury came to report what was a partial verdict.

## A. *Weight of the Evidence*

■ Unlike a motion for judgment notwithstanding the verdict discussed above, the Court in a Rule 59(a) motion which argues that the verdict was against the weight of the evidence applies a standard which is less strict. The judge is free to weigh the evidence for himself. Silverii v. Kramer, 201 F.Supp. 513 (D.C. Pa. 1962), aff'd as to new trial, 314 F.2d 407 (3rd Cir. 1963). The standard throughout the federal courts for review of the evidence under Rule 59(a) is the view spelled out in Lind v. Schenley Industries, Inc., 278 F.2d 79 (3rd Cir. 1960), cert. den., 364 U.S. 835 (1961). When a trial judge acts in weighing the evidence, the Court said, he has

> To some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. 278 F.2d at 90.

■ This is the more so if the case was relatively short, simple and easily comprehended by intelligent laymen. The less complicated the case, the more restraint the trial judge should exercise in any granting of a new trial on the basis of the weight of the evidence. 11 Wright & Miller, Federal Practice and Procedure, § 2806 at 48. The case at hand was a three-day trial, including closing arguments and instructions.

As the Court views the evidence, it is undisputed that Clarke was shot by Bruckner on the latter's property. Whether he was shot inside Bruckner's dwelling place or outside is discussed in a later section. Bruckner testified that he shot Clarke, intending to kill him. To obtain the weapon, he said, he raced from the outside of the house inside to his bedroom when Clarke moved toward Bruckner's car and released his grip on him. The evidence is in dispute whether Clarke, at the time he was shot, was wielding a machete in a threatening manner several feet away from Bruckner.

It is further undisputed that Bruckner had a variety of measures he could have taken short of shooting the plaintiff. This was brought out on the vitally effective cross-examination of Bruckner by Clarke's counsel. Bruckner admitted that the house was locked, that Clarke made no effort to get inside the house, that he, Bruckner, did not call the police or neighbors for assistance, nor did his wife, and he did not fire a warning shot, or verbally warn Clarke that he was armed and would shoot him if he came inside the house. Rather, he

picked up the pistol, pushed his wife out of the way, opened the locked front door of the house, and confronted Clarke outside the front door of the house, and shot him. All of this testimony left the jury with the clear inference that Bruckner was safe inside his house, and opened that locked front door and shot Clarke out of a sense of humiliation or, as Clarke's attorney argued, because Clarke was going to steal his car.

The testimony and exhibits also demonstrated that Clarke was treated at the hospital for his injuries and paid a $290.00 hospital bill. It was for the jury to determine whether the expense itself was validly linked to the shooting or to Clarke's prior mental condition. What cannot be disputed is that Clarke suffered a gunshot wound and was treated for it, and has two scars, the entry and exit wound.

Clarke also testified that after he was shot, Bruckner ordered him to kneel and pray, because he "only had seven minutes to live." Bruckner admitted this took place, but was vague on the question of whether he "ordered" Clarke to do what he did. Nonetheless, Clarke stated that he did what Bruckner ordered him to do because Bruckner had already shot him once, still had the gun, and was standing over him. He stated that he was frightened, and that as soon as Bruckner told him to leave, he jumped and ran to his car and drove to the hospital.

The jury was carefully instructed on the elements of assault and battery, false imprisonment, the defense of self defense, and the right of Bruckner to briefly "imprison" Clarke after the shooting to prevent him from inflicting harm on Bruckner. The jury was also instructed separately on the issue of damages for the battery, and for the false imprisonment, if any, and the verdict form provided for separate answers to those issues.

The jury returned a verdict of $10,000.00 for assault and battery, and $5,000.00 for false imprisonment. The Court is not left with a definite and firm conviction that a mistake as to the weight of the evidence has been committed, and therefore will not upset the jury verdict on that basis. United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

Bruckner also argues that the $35,000.00 award of punitive damages was against the weight of the evidence, and should not have been submitted to the jury. However, since Bruckner admitted on the witness stand that he shot Clarke, intending "to kill him", the elements of intentional behavior were established. The jury was then required to find whether that intentional act admitted by

Bruckner was willful, wanton, malicious or in reckless disregard of the rights of Clarke. If so, they could award punitive damages. After being instructed by the Court on punitive damages, word for word from the requested instruction submitted by Bruckner, they returned with an award. Even the question of the wealth of Bruckner became an open question when Bruckner himself, again on cross-examination, admitted that he sometimes puts his own property in the name of other persons. Thus, his net worth as developed earlier in the case could, in the jury's view of the evidence, be expanded to include other property not included in his earlier recital.

■ If Bruckner cannot meet the Rule 59(a) test to overturn the verdict on the basis of the evidence, then, of course, he cannot meet the stricter test discussed earlier for a motion for judgment notwithstanding the verdict.

### B. *Admission of Evidence*

■ Bruckner argues that the Court erred in admitting certain physical evidence, such as the pistol and the shirt Clarke was wearing at the time. Also, Bruckner claims, the Court should not have permitted the testimony of Deputy U.S. Marshal Richard Bell, who recounted a conversation he had with Bruckner at the time the pleadings in this case were served many months after the incident. However, the question of whether the plaintiff was shot in the front or the back, the size of his bullet wound, and the extent of his injuries and bleeding, were all at issue. The shirt was bloodstained, and had a bullet hole in it. Also admitted was the machete owned by Clarke, without objection from Bruckner. Certainly each of these pieces of evidence was relevant to the issues which the jury was called on to resolve. Bruckner brought an expert witness to the stand to testify as to whether Clarke was shot in the front or the back. The shirt with the blood and the bullet hole was relevant to that question. The gun was admitted to demonstrate its caliber and the length of its barrel so the jury could measure these factors in making its determination. There was no error as to the physical evidence admitted.

■ Marshal Bell's testimony was brief. Since Clarke had alleged malicious, willful and wanton behavior, the question of maliciousness, particularly, had to be resolved in part by the jury's decision of Bruckner's attitude. The remark of Bruckner to Marshal Bell many months after the incident asking "Oh, he did not get enough?", or words to that effect, goes directly to the question of

maliciousness and was admitted because of its relevancy in that regard.

C. *Exclusion of Evidence*

■ Bruckner next claims that the Court erred in preventing him from making a full presentation of his evidence. Barred from testifying were two persons who would have testified as to Clarke's propensity for violence when under the spell of drugs, alcohol or marijuana. In a decision before the trial commenced, the Court ruled that because the issue of who was the aggressor was very much before the jury, the defendant would be permitted to show specific earlier acts of the plaintiff which demonstrated a propensity for violent behavior under conditions similar to those existing at the time of the incident (see 91 A.L.R.3d 708, 738). Over strong objection from Clarke's counsel, Bruckner took full advantage of this ruling. Medical records were admitted showing a propensity for violence, Clarke's treating psychiatrist was called for the same evidence, and most telling, Clarke's own wife testified fully as to his violent behavior on earlier occasions. In many ways she was Bruckner's best witness. The Court, exercising its discretion to prevent redundant or repetitive testimony, limited further testimony after a full exposition of Clarke's prior acts of violence was before the jury. There was no error in that ruling, and Bruckner enjoyed the benefit of wide latitude in the introduction of such evidence, and made effective use of it in closing argument.

D. *Visit to the Bruckner Property*

■ Bruckner next claims that it was prejudicial to permit the jury to visit his property, because this demonstrated the difference in the economic standing between plaintiff and defendant. But, at the same time, Bruckner disputes where the incident took place, and whether it was "inside" or "outside" the Bruckner dwelling place. No number of photographs or drawings could give the jury as truthful a picture of the scene as a visit to the site. A cautionary instruction was given that the visit was not related to the wealth or standing of Mr. Bruckner, and the Court then exercised its discretion to permit a carefully controlled visit. To do so in the context of this case, upon request of Clarke, was not error.

E. *The Court's Jury Instructions*

■ Bruckner finds major, multiple error in the Court's instructions, both as to what was said, and what was not said. His objections in both respects were fully protected on the record and will not

be taken up item by item in this decision. Suffice it to say that the instructions were standard in form. On the issues of assault and battery, false imprisonment, and the affirmative defenses to those allegations, the instructions were almost direct quotations from the Restatement (Second) of Torts. Bruckner suggests that the Court erred in not giving the statutory definitions of self defense and lawful violence contained in Title 14, V.I. Code, covering criminal offenses. However, it was Bruckner who preferred the Restatement (Second) of Torts version, because it offered an expanded defense in his favor, especially as to his rights with respect to his "dwelling place". In discussing his choice, Bruckner opted for the Restatement version. He cannot now complain of the result.

Of particular note, however, is the question of whether Bruckner was "inside" or "outside" his dwelling place. It is his contention that as a matter of law the Court should have instructed the jury that he was "inside" his dwelling place, and had no need to retreat. The Court submitted the question to the jury to decide, because it is undisputed that the shooting took place outside the main front door of the Bruckner residence, in the open air, albeit on a landing of sorts. In support of his position, Bruckner cites Restatement (Second) of Torts § 65 comment h, and illustration 6. That illustration describes a person brandishing a razor approaching another person "standing in the vestibule of his dwelling house." Bruckner equated the "vestibule" with the landing outside of Bruckner's front door where this incident took place, and urged that as a matter of law, they were equivalent. Ergo, he states, Bruckner was "inside" his dwelling place, and entitled to stand his ground without retreat.

Webster's New World Dictionary of the American Language (College Edition 1966) defined a "vestibule" as follows:

1. a small entrance hall or room, either to a building or a room within a building

Webster's Third New International Dictionary (1966) offers the following definition of vestibule:

1. a; an entrance court (as of an ancient Roman building); b; a passage, hall or chamber between the outer door and the interior of a building: a porch or entrance into a house

■ Given the tropical design of the Bruckner residence, it was uncertain whether the landing outside the main front door could unquestionably meet either definition. Since it was an open question, the jury was instructed that it must decide the issue as part of its decision on the issue of Bruckner's self defense. Given the cir-

cumstances, placing the matter in the hands of a jury familiar with the tropical setting and such residences was the fairest method of settling the issue.

## F. *The Jury Verdict Form*

The jury verdict form followed the format used in countless other civil cases in this Court. Bruckner urges that because it let the jury know the legal result of its answers to certain questions, it was error to use it. For instance, after the jury was asked if it decided in favor of the plaintiff or the defendant on the issue of assault and battery and secondly on false imprisonment, it was parenthetically advised that if it decided in favor of the defendant on both issues, it should sign the form and return to the courtroom. Obviously, this told the jury what the effect of a finding in favor of the defendant was, i.e., that no money would be awarded to the plaintiff.

Bruckner cites two mid-West cases in support of his view, but no authority of local persuasiveness. The Court's instructions about Bruckner's self defense and false imprisonment contentions informed the jury that if it found in his favor on those issues, they should not award Clarke any damages. The verdict form submitted by Bruckner would have had the jury make a money damage award without respect to its findings on liability. This is no more helpful, and perhaps even far less helpful, than the unsatisfactory, but probably necessary, device of placing parenthetical references between the various questions on the jury verdict form.

In the case before it, the Court chose to make use of the standard form used on so many occasions in the past by its District Court brethren, past and present.

## G. *Motion for a Mistrial*

At one point the jury indicated that it had reached a verdict. Upon the return to the courtroom, however, it became apparent that the jury had failed to answer questions relating to the issue of false imprisonment. Bruckner, in his last point urging a new trial, argues that the jury foreman answered that the jury had found that Bruckner *did not* falsely imprison Clarke, and moved for a mistrial. The Court made appropriate inquiry and determined that in fact the jury had stated that it had not answered the question itself. The jury was sent back to the jury room and told to answer that question and any other questions which would apply.

During the session it was easy for Bruckner's counsel to make such a mistake. The jury had already reported that it *had*

found Bruckner liable for assault and battery. It was when the foreman was reading the question leading to a statement of the amount awarded that the failure to read Question No. 2 (as false imprisonment) was noted. Accordingly, when the jury returned to complete its deliberations, Bruckner was left in the courtroom with the knowledge he had been found liable, but ignorant as to the extent of the jury award of money damages.

In order to be precisely accurate on the question, the Court ordered the transcript, which, upon reading, reflects its recollection of the events. The transcript is attached to this opinion in full. There can be no doubt that the jury had not answered the question, and it was properly sent back to the jury room to complete its deliberations.

## CONCLUSION

The Court having reviewed the record and the points argued by Bruckner's counsel in his motions, and having perceived no error warranting either judgment notwithstanding the verdict or a new trial, the motions will be denied.