## ASATARO TAGAMI AND SHIZUKO TAGAMI
### *v.* GUSTAVE A. MEYER.

### NO. 2904.

ARGUED OCTOBER 19, 1956.                    DECIDED NOVEMBER 9, 1956.

### RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

Plaintiffs, as joint owners of a parcel of land situated at the end of Panui street in Honolulu, instituted an action to quiet title, alleging first that the defendant, as owner of the parcel of land adjoining plaintiffs', was claiming without right an area containing 1,854 square feet at the makai-ewa corner of plaintiffs' land and, second, that the defendant was adversely claiming and using another portion of plaintiffs' land as a roadway for vehicular ingress and egress to defendant's property from Panui street.

The defendant filed a cross complaint asserting ownership of the 1,854 square feet situated at the makai-ewa corner of plaintiffs' property and an easement over plain-

tiffs' property from Panui street to his own. To these claims plaintiffs filed a general denial.

Plaintiffs purchased their parcel by quitclaim deed from Arthur G. Smith and U. E. Wild on October 25, 1937, the said Smith and Wild having theretofore purchased the parcel at a tax sale by deed dated December 11, 1935. The tax deed recited no metes and bounds description but merely described the land as being a portion of a certain royal patent number 4521, land commission award 7765, and conveyed to Kaikoo on May 1, 1888, by deed from Kanekuapuu. A duly recorded quitclaim deed was made to Smith and Wild by Lizzie K. Mendiola, defaulting tax-payer, which deed described the parcel by metes and bounds as containing an area of 39,523.95 square feet. The description encompassed the area of that parcel in dispute between plaintiffs and defendant.

The defendant, whose land adjoins that of plaintiffs, acquired title by deed from Wile Iwiula dated November 8, 1928, which was duly recorded. This deed, which was prepared by the defendant himself, contained no description by metes and bounds; however, a mortgage on Iwiula's property of September 19, 1927, did describe the same by metes and bounds, which description *also* encompassed the parcel in dispute between plaintiffs and defendant, but neither the deed nor mortgage made any mention of the so-called defendant's right of way for ingress and egress to defendant's land.

The trial judge rendered his decision finding in favor of the defendant as to his claim of an easement over and across the lands owned by plaintiffs, but dismissed both parties' claim of title to that portion of the land situated at the makai-ewa corner of the plaintiffs' land.

It is unnecessary to discuss the testimony given relative to the disputed area of land claimed by both plaintiffs and defendant as the judge in his conclusions indicated neither one showed a clear title to the parcel in dispute

and each party was dismissed as to his claim to the disputed parcel.

The roadway, which defendant claims constitutes an easement over plaintiffs' land, runs through and across the plaintiffs' land from the dead end of Panui street. None of the documents or maps in evidence shows any trace of such easement and there is no documentary proof of its existence. None of the deeds mentions such easement nor does any of the maps show its existence, nor does any of the several mortgages refer thereto.

There is no evidence whatever as to any vehicular use of the purported road by anyone occupying the land of defendant prior to 1926. At that time the neighborhood had only a scattered population, many of whom made a cursory use of plaintiffs' land to gain admission to their own lots, though these lots had access to Judd and other streets. Further, about thirty feet from the defendant's boundary, on what is now the roadway, there was a large stone extending some two and a half feet above ground and a number of feet beneath the ground which would have prevented the use of what is now a paved road for vehicular traffic.

According to the woman living with the defendant as his wife, she and her former husband who had moved into the property in 1925 and lived there until 1932 had used the road back and forth across plaintiffs' property which formerly belonged to her mother-in-law.

In 1938 the plaintiffs constructed the coral road leading to the houses on the mauka end of their lot. According to the testimony of plaintiffs, the defendant requested the use of such road but plaintiffs denied him its use, saying it was too narrow, and was obstructed by this large stone, but proposed to defendant that he would be given the use of the road if defendant would remove the stone and pay two dollars per month rental. The plaintiffs testified that when they first interviewed the defendant, they told him

that Antone Freitas, who lived mauka of plaintiffs, was paying two dollars per month. The defendant did make such payments, paying six dollars in August of 1938; defendant stated his only payment was in January 1942 in the sum of twenty-four dollars, that this was for taxes and maintenance of the road; but plaintiffs produced books showing the first payment was made in August 1938 for three months commencing in June, and payments continued thereafter until June 1947 when the plaintiffs announced the rent would be raised to three dollars and a half per month.

In June 1947 plaintiffs notified defendant the monthly payments for the right of way would be raised to three dollars and a half per month. Defendant, however, ignored the notice and in November 1947 paid ten dollars for the previous five months which was the last payment by the defendant; however, plaintiffs did receive three dollars and a half for the month of December 1947 from the woman who was living with the defendant as his wife. No payments were made thereafter.

In January and February 1948 plaintiffs put a fence across the ewa end of the roadway. In September 1948 defendant tore down the fence and resumed the use of the roadway.

It is elementary that a party asserting a claim to an easement has the burden of proof and it was essential that all of the elements which give rise to a prescriptive right must occur in order to create such easement. (28 C. J. S., *Easements*, § 10, p. 645.)

The law which governs the elements necessary for acquisition of title by adverse possession is applicable to the establishment by prescription. (17 Am. Jur., *Easements*, § 63, p. 974.) Under this rule, the use and enjoyment must be adverse, under a claim of right, continuous and uninterrupted, open, notorious and exclusive, with the knowledge and acquiescence of the owner of the servient

tenement and must continue for the full prescriptive period. (17 Am. Jur., *Easements*, § 63, p. 974.)

"A permissive use of a right of way will not create an easement, however long continued." (*The Heirs of William Jarrett, deceased,* v. *J. M. Kapena,* 4 Haw. 417.)

"Adverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner." (1 R. C. L. 695; *Territory* v. *Pai-a,* 34 Haw. 722.)

As stated, the casual use by a number of neighbors would not result in an easement nor would a permissive use however long continued.

It is further well settled that permissive use of the land at the inception of defendant's occupation carries with it the presumption that such use continues permissive. (*Smith* v. *Laamea,* 29 Haw. 750, 758; *Smith* v. *Hamakua Mill* Co., 15 Haw. 648, 657.)

"* * * the asking and obtaining of permission, whether from the tenant or owner of the servient estate stamps the character of the use as not having been adverse * * *" (28 C. J. S., *Easements,* § 14d, p. 655) and "User of an easement is not adverse where the party using it pays rent for the privilege." (28 C. J. S., *Easements,* § 14f, p. 658.)

"Where the person using the easement has, within the prescriptive period, acknowledged a superior right in the other party, such admission is fatal to his claim * * *. There is such an admission where claimant * * * pays a consideration for the exercise of the right during a part of the prescriptive period, or requests permission to use the easement, or offers to purchase the right, during the prescriptive period." (28 C. J. S., *Easements,* § 13f, p. 651.)

It is undisputed that under an agreement the defendant paid money to plaintiffs for a period of nine years and undertook to and did remove a very large stone as part

of the consideration for his permissive use of the roadway.

Reversed.

*W. C. Tsukiyama* (*Tsukiyama & Yamaguchi* on the briefs) for plaintiff in error.

*O. P. Soares* (also on the brief) for defendant in error.