LEONARD FELICIANO, ALAN FELICIANO, BEATRICE FELICIANO, and KAREN FELICIANO, through her next friend, BEATRICE FELICIANO, Plaintiffs-Appellants, *v.* CITY AND COUNTY OF HONOLULU, a municipal corporation, Defendant-Appellee

NO. 6099

MAY 29, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

---

* Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-10 (1979 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

*Per Curiam*. This is a civil action brought by plaintiffs-appellants Leonard, Alan, Beatrice and Karen Feliciano against defendant-appellee City and County of Honolulu for trespass, assault, battery and malicious prosecution allegedly committed by police officers employed by the City. The lower court entered judgment upon a verdict by the jury awarding no damages. From this judgment, plaintiffs appeal. We affirm.

This lawsuit grows out of an incident that took place on November 20, 1972 at the appellants' residence, 724 Bannister Street, Honolulu. In the early morning hours of that day, appellant Leonard Feliciano was involved in an argument with his sister Wanda. Police officers were summoned to quell the disturbance. Officers Joseph Rodrigues and Ronald Sismar were among the police officers who responded. What occurred during the incident thereafter is sharply disputed.

Appellants and their witness Arlene Feliciano testified to the following version of the facts. Before the police arrived, the sibling quarrel was brought under control by Mrs. Beatrice Feliciano, mother of Leonard and Wanda. Police officer Ronald Sismar was the first to appear at the Feliciano home. Arlene went outside to speak with him followed by Alan. Soon after, Officer Rodrigues arrived and approached the group carrying a large flashlight in his hand. Alan explained to Officer Rodrigues that the family argument was under control; the officer replied, "What, you getting smart?" Officer Rodrigues, having noticed a stop sign fastened to the fence surrounding the Feliciano residence, then threatened to arrest Alan for theft. Alan denied having stolen the stop sign. Despite his claim of innocence, Officer Rodrigues advanced toward Alan and ordered him under arrest. Alan backed away, finally retreating into the house. Once inside, Alan told the officer to leave him alone and again denied involvement in the theft of the stop sign. Officer Rodrigues responded by spraying Alan with mace affecting not only Alan but also Leonard, Karen and their mother, Beatrice. Eyes burning, everyone rushed to remove the mace. Alan then returned to request again that Officer Rodrigues leave him alone; instead, the officer tried to subdue him. Alan slipped away by

running into his bedroom and locking the door. Officer Rodrigues then tried to break the door down. While locked in the bedroom, Alan attempted to escape through a window. He was part way outside when an unidentified policeman pointed a gun at him and threatened to shoot if he jumped. Frightened by the threat, Alan withdrew into the room. At this point, Leonard Feliciano protested Officer Rodrigues' attempts to kick in the door and told the officer to leave his brother alone. Officer Rodrigues quickly turned around and struck Leonard in the face with his flashlight. Leonard went unconscious. He was then handcuffed and dragged outside where Officer Rodrigues and another officer continued to beat and kick him.

Police officers Rodrigues, Sismar and Akana testified to an entirely different version of the same events. According to their testimony, when Officers Sismar and Rodrigues arrived at the Feliciano residence, Alan swore at them, called them "f----- pigs," and told them to stay off his property. The officers wanted to question Mrs. Feliciano about the disturbance and thus, in spite of the threats, they attempted to enter the property. As they walked through the front gate, Alan pushed Officer Rodrigues, was rebuffed, lunged for Rodrigues' throat, and was fended off again. Officer Rodrigues at this point placed Alan under arrest for assault and battery on a police officer. To escape arrest, Alan ran into the house; Officer Rodrigues followed. At the entrance of the house, the officer was kicked in the stomach by Leonard Feliciano. Once inside, members of the Feliciano family attempted to hold Officer Rodrigues back as Alan and Leonard came toward him. To stop them, he used his mace. After the mace was sprayed, the two Feliciano brothers ran out the rear of the house and disappeared. Alan returned shortly thereafter and threatened to get a gun to shoot the police officers. Officer Rodrigues repeated to Alan that he was under arrest and attempted to restrain him. Alan eluded the officer by running into the rear bedroom and locking the door. Concerned that Alan was attempting to retrieve a gun in the room, Officer Rodrigues tried to push the door in. Leonard then suddenly reappeared and began striking the officer. To protect himself, Officer Rodrigues blocked Leonard's punches

and in the scuffle accidently hit Leonard with his flashlight. Leonard Feliciano was then handcuffed and taken outside. While outside, Leonard Feliciano was not beaten or kicked by any of the police officers present.

The appellants list five points on appeal. Three we find without merit; the remaining two we discuss below. First, appellants contend that the admission into evidence of testimony describing Alan and Leonard Feliciano as "beat characters" constitutes prejudicial error requiring reversal of the lower court's judgment. Prior to trial, appellants moved to prohibit any reference to the asserted prejudicial description. The trial judge denied their motion and the following testimony was elicited from Officer Rodrigues upon direct examination by counsel for the appellee:

Q. Officer Rodrigues, are you familiar with the term "beat character?"

A. Yes, sir.

\* \* \* \* \*

Q. And what does it mean to you as a police officer?

A. It's a character on your beat that are involved in violence or criminal activity and things like that.

Q. You have characterized Leonard Feliciano as a beat character?

A. Yes, sir.

\* \* \* \* \*

Q. How about Alan Feliciano?

A. Yes.

It is well-settled that evidence of the good or bad character of either party to a civil action is generally inadmissible. *Strickland v. Jackson*, 23 N.C. App. 603, 209 S.E. 2d 859, 862 (1974). Such evidence is regarded as too remote to be of substantial value, as tending to confuse the issues and unduly protract the trial and, more important, as offering a temptation to the jury to reward a good life or punish a bad one instead of deciding the issues before them. *Id.* In civil actions for assault and battery, however, there are two firmly established exceptions to the rule. First, where a defendant in a civil action for assault and battery pleads self-defense, he may introduce

evidence of the plaintiff's reputation for violent behavior if he proves it was known to him. Such evidence is deemed probative on the issue of whether the defendant reasonably apprehended the danger of bodily harm. *Martin v. Estrella*, 107 R.I. 247, 254-55, 266 A.2d 41, 47 (1970); McCormick on Evidence § 192 (1972). Second, irrespective of previous knowledge, where in a civil action for assault there is an issue as to who committed the first act of aggression, evidence of the good or bad reputation of both plaintiff and defendant for peacefulness is also admissible. *Carrick v. McFadden*, 216 Kan. 683, 686-87, 533 P.2d 1249, 1252 (1975); *Brooks v. Bergholm*, 256 Or. 1, 6-7, 470 P.2d 154, 157 (1970); Annot., Admissibility of evidence of character or reputation of party in civil action for assault (other than for purpose of impeaching him as a witness), 154 A.L.R. 121 (1945). In both situations, there is recognized a special need to know the dispositions of the parties so as to judge their probable acts.

In the instant case, Officer Rodrigues testified that he patrolled the area in which the Felicianos resided for about a year prior to the November 20, 1972 incident and that during such time he had encountered both Alan and Leonard Feliciano. At trial, appellants Alan and Leonard attempted to prove assault and battery perpetrated by Officer Rodrigues; the officer claimed self-defense. The officer's reasonable apprehension of violent conduct by the appellants was thus an issue at trial. Evidence of Alan and Leonard Feliciano's reputation for violence was therefore admissible under the first exception to the character evidence rule. The second exception set forth above would likewise permit the introduction of evidence bearing on the appellants' reputation for violence. At trial, the issue of who committed the first act of aggression was raised by conflicting testimony; members of the Feliciano family and members of the police force each charged the other with initiating the turbulence. Thus, the second exception to the character evidence rule also applies to the instant case.

Appellants contend that even if the foregoing exceptions were applicable, the trial court nevertheless erred in admitting testimony describing Alan and Leonard Feliciano as

"beat characters." The term "beat characters," appellants argue, was used to establish appellants' general bad character rather than their reputation for violence. Courts in other jurisdictions have held testimony on characteristics such as "quarrelsomeness" or "troublemaking," related to but not precisely limited to a disposition for violence, inadmissible for its tendency to divert rather than aid the jury in determining the crucial issue. *See, e.g., Nance v. Fike,* 244 N.C. 368, 93 S.E.2d 443 (1956). We agree that these exceptions to the character evidence rule should be carefully restricted to reputation for violence to avoid prejudice to the parties. However, contrary to the appellants' contention, the challenged testimony here directly addressed the appellants' reputation for violent and turbulent behavior. Officer Rodrigues defined "beat characters" as characters on your beat involved in "violence or criminal activity." We thus conclude that Rodrigues' testimony was properly admitted.

Second, appellants contend that the trial court erred in denying their motion for a directed verdict in favor of Alan Feliciano for the assault committed when an unidentified police officer pointed a gun at him and threatened to shoot. Appellant Alan Feliciano argues that since no evidence was offered by the appellee contradicting his testimony establishing the assault he was entitled to a motion for directed verdict. A verdict may be properly directed for the party with the burden of proof if the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn. *North Carolina National Bank v. Burnette,* 297 N.C. 524, 536-37, 256 S.E.2d 388, 395 (1979); *see also Chu Chung v. Jellings,* 30 Haw. 784, 786 (1929); 9 Wright and Miller, Federal Practice and Procedure § 2535 (1971). However, where proof of such fact depends upon oral evidence, a trial court is ordinarily not justified in directing a verdict in favor of the party bearing the burden of proof. *Crain v. Webster Electric Cooperative,* 568 S.W.2d 781, 787 (1978). Under such circumstances, the credibility of the witnesses and the weight to be accorded their testimony are almost always questions of fact and for the jury to decide. *Shephard v. Hunter,* 508 S.W.2d 234, 237 (1974). Even where a plaintiff's oral testimony is

uncontradicted and unimpeached, a jury may return a verdict in favor of the defendant. *Id*. Thus, in the instant case, we find that the judge properly submitted the issue of Alan Feliciano's credibility to the jury. Alan Feliciano was the only person who testified as having witnessed the alleged assault. The police officer who allegedly threatened to shoot was never identified. Dramatically different versions of all the events occurring on November 20, 1972 were given by witnesses for either side and thus witness credibility was crucial to the trial's outcome. Given these circumstances, we cannot say that reasonable minds could not differ in deciding whether Alan Feliciano had suffered an assault. Therefore, we find that the trial court properly denied appellants' motion for a directed verdict.

Affirmed.

*David L. Turk* and *Brian W. C. Pang* for Plaintiffs-Appellants.

*James E. Ross*, Deputy Corporation Counsel, for Defendant-Appellee.