THE NATURE CONSERVANCY, Substituted Plaintiff and Defendant-Appellee, *v.* MAKANUI NAKILA, aka BENJ. M. NAKILA, or his heirs; EMILY KIAAINA, or her heirs; KEAHO, or his heirs; NAMOKUELUA, or her heirs; POONIKA, aka F.C. POONIKA, or his heirs; HEE, or her heirs; KEKO ALAPAI, or his heirs; KALAWAIA 1, or his heirs; KAPULE, or his heirs; KEKUA, or his heirs; KUAANA, or his heirs; POEALII, or his heirs; PULE-HUA, or his heirs; KAAIPUAA, or his heirs; NAINOAE-LUA, or his heirs; STATE OF HAWAII; UNITED STATES OF AMERICA; ROBERT E. WILLISON; ELEANOR B. WILLISON; COUNTY OF MAUI; and TO ALL WHOM IT MAY CONCERN, Defendants; MARY B. DRUMMOND and MILDRED C. DRUM-MOND, Defendants-Appellants; HANA RANCH, INC., Defendant-Appellee; and KIPAHULU INVESTMENT COMPANY, Intervenor

NO. 8245

(CIVIL NO. 3197)

OCTOBER 31, 1983

BURNS, C.J., TANAKA, J., AND CIRCUIT JUDGE RONALD T.Y. MOON IN PLACE OF ASSOCIATE JUDGE HEEN, RECUSED

OPINION OF THE COURT BY TANAKA, J.

The appeals in this case are (1) by claimant Andrew Nakila (Nakila) from an order denying his motion to set aside an entry of default and (2) by defendants Mary B. and Mildred C.

Drummond (collectively the Drummonds) from the judgment. The judgment (a) declared that plaintiff Jean Waggoner Stehlin (Stehlin)[1] and defendant The Nature Conservancy (TNC) are the owners of an undivided 85% interest in the land covered by Royal Patent Grant 3057 (Grant 3057) and that the Drummonds are the owners of an undivided 15% interest, (b) held that defendant Hana Ranch, Inc. (Hana Ranch) has an easement in gross by prescription for a water pipeline across Grant 3057, and (c) awarded TNC $1,916.40 as reimbursement for costs and attorneys' fees. We affirm in part and reverse in part.

The issues dispositive of the appeals and our answers are:

1. Whether the trial court abused its discretion in denying Nakila's motion to set aside the entry of default as to him. No.

2. Whether the trial court erred in directing a verdict in favor of Stehlin and TNC on the question of paper title concerning shares 10, 11, 14, 15, 16, and 20 of Grant 3057. No.

3. Whether the trial court committed reversible errors by excluding a certain witness and certain testimony and by "permitting parties with common interests to duplicate testimony and to lead their own witnesses." No.

4. Whether the jury erred in finding that Hana Ranch had a water pipeline easement by prescription.[2] Yes.

5. Whether the trial court erred in awarding TNC reimbursement for attorneys' fees. Yes.

On November 26, 1976, Stehlin filed a complaint seeking to establish and confirm her title as the fee simple owner of an undivided 85% interest in that certain portion of Grant 3057 containing an area of 123.143 acres and identified by tax map key 1-6-2-8 and to partition the land.

---

[1] The record discloses that plaintiff Jean Waggoner Stehlin was also known as Jean Waggoner Coberly and Jean Waggoner McCaughey. At the time of trial, she was known as Jean Waggoner. Therefore, the judgment filed on January 5, 1981 refers to her as Jean Waggoner. However, in this opinion, she will be referred to as Stehlin.

[2] In their opening brief, the Drummonds raise two additional issues concerning the prescriptive easement as follows: (1) whether the trial court erred in excluding certain documentary evidence and (2) whether the trial court erred in granting Hana Ranch's motion for judgment notwithstanding the verdict on the question of overburdening of the easement. Our disposition of issue 4 renders them moot.

The Drummonds answered claiming 100% ownership of the 123.143 acres and counterclaimed for damages based upon alleged breaches of fiduciary duty, unfair and deceptive trade practices, slander of title, monies had and received, conversion, and trespass. Additionally, the Drummonds cross-claimed and alleged 100% ownership of the entire Grant 3057, thereby enlarging the action to include the remaining portion of Grant 3057, containing 113.029 acres and identified by tax map key 1-6-2-12.

TNC, a Washington, D.C. charitable corporation, filed its pleadings claiming ownership of an undivided 85% interest in tax map key 1-6-2-12 by virtue of conveyances from Stehlin and adverse possession by TNC and its predecessors in title.

Hana Ranch answered, counterclaimed, and cross-claimed, alleging ownership of a prescriptive easement for a water pipeline, together with an access easement across Grant 3057.[3]

On the morning of September 15, 1980,[4] Nakila, an unnamed defendant claiming an interest in Grant 3057, filed a motion to set aside the entry of default as to him. On the same morning, the trial court heard and denied the motion.[5]

Immediately thereafter, a jury trial commenced with Stehlin, the Drummonds, TNC, and Hana Ranch as participants.[6] By agreement, the trial was segmented into three parts: (1) paper title to Grant 3057, (2) title to Grant 3057 by adverse possession, and (3) acquisition of a water pipeline easement in gross by prescription.

---

[3] Kipahulu Investment Company (KIC), a Hawaii general partnership, intervened in the action claiming an easement for water pipelines and the right to maintain and replace them. However, stating that its interests were the same as Hana Ranch's, KIC did not participate in the jury trial nor in this appeal.

[4] By order of the United States District Court for the District of Hawaii filed on July 7, 1977, the case was removed and some proceedings were had there. On September 14, 1979, the case was dismissed in the United States District Court and returned to the Second Circuit Court.

[5] The written order was filed on November 5, 1980. *See* explanation concerning Nakila's involvement *infra*.

[6] All other defendants had been defaulted or their disclaimers had been filed after their appearances.

After all evidence on the paper title issue had been presented, the trial court directed a verdict that Stehlin and TNC had paper title to 16 shares or 80% of Grant 3057 and the Drummonds had paper title to three shares or 15%. The court ruled that title to the remaining share 13 had to be determined by the jury.

Likewise, after the presentation of evidence on the adverse possession issue, the trial court directed a verdict that Stehlin and TNC had title to the same 16 shares and the Drummonds had title to the same three shares and again the ownership of share 13 was left for jury determination.

Concerning the water pipeline easement issue, the trial court denied both Hana Ranch's and the Drummonds' motions for directed verdict.

On September 19, 1980, the jury returned its special verdict finding that (1) Stehlin and TNC own Share No. 13 by paper title,[7] (2) Hana Ranch and/or its predecessors acquired a prescriptive pipeline easement together with a road access easement, and (3) Hana Ranch had overburdened the prescriptive easement with a second pipeline. On December 18, 1980, however, the trial court granted Hana Ranch's motion for a judgment notwithstanding the verdict concerning the third finding.

On January 5, 1981, the trial court filed its judgment which included an award of $1,916.40 to TNC as reimbursement for costs and attorneys' fees. The appeals of Nakila and the Drummonds followed.[8]

Subsequent to the entry of judgment, Stehlin transferred her interest in Grant 3057 to TNC. Therefore, by stipulation

---

[7] The special verdict form provided that only if the jury found that the Drummonds own Share No. 13 by paper title, was it to answer question 2, "Did STEHLIN and/or her predecessors acquire Hui Share No. 13 (KUAAINA) by adverse possession?"

[8] After the jury verdict was read, the Drummonds' counsel stated to the court that all counterclaims would be dismissed without prejudice so that the jury need not return. However, the record reveals no written dismissal of those counterclaims.

Despite the fact that the partition claim is still pending, the trial court's Rule 54(b), Hawaii Rules of Civil Procedure (HRCP) (1981), certification gives us appellate jurisdiction.

and order filed in the supreme court on May 6, 1982, TNC was substituted as plaintiff-appellee in place of Stehlin.

### I. SETTING ASIDE ENTRY OF DEFAULT

Nakila was neither named in Stehlin's complaint nor served personally or by mail. Pursuant to Hawaii Revised Statutes (HRS) § 634-23 (1976), service on unknown persons was made by publication in the Maui News. By an order filed on January 20, 1977, except for those specified, all defendants, including unknown persons claiming adversely to Stehlin, were defaulted.

The record includes a January 18, 1980 letter from Mr. Vernon T. Tashima, Nakila's counsel, to Mr. Donald E. Scearce, Stehlin's counsel, stating that Nakila claimed an interest in Grant 3057 and requesting documentary proof if Stehlin and/or the Drummonds were claiming the entire interest. In his January 21, 1980 letter to Mr. Tashima, Mr. Scearce responded that Jonah Nakila had conveyed his interest in the land to T.K. Clarke in 1891 and, thereafter, title had passed down through an unbroken chain to Stehlin.[9] On August 18, 1980, Nakila wrote to advise the court that he was claiming an interest in Grant 3057. By its letter of August 28, 1980, the court informed Nakila that a pre-trial conference on the case was scheduled for August 29 and a jury trial had been set to commence on September 15 at 8:00 a.m.

On September 8, 1980, Nakila filed a document entitled "Title Brief of Andrew Nakila."

At 7:51 a.m. on the day of trial, Nakila filed a motion to set aside the default as to him. Simultaneously, he filed a motion to continue the trial. After a hearing at 9:00 a.m. the same day, the court denied Nakila's motion to set aside the default.

A Rule 55(c), HRCP (1981), motion to set aside an entry of default is addressed to the sound discretion of the trial court.

---

[9] Although not a part of the record, a memo dated January 21, 1980 indicates that Mr. Tashima sent a copy of Mr. Scearce's letter to Nakila and advised Nakila that "[i]n view of the conveyance, it appears that you have no interest in the Maui property." Exhibit 2 attached to Nakila's Opening Brief.

*Manley v. Mac Farms, Inc.,* 1 Haw. App. 182, 616 P.2d 242 (1980); *Hupp v. Accessory Distributors, Inc.,* 1 Haw. App. 174, 616 P.2d 233 (1980); 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: *Civil* § 2692 (2d ed. 1983). In exercising its discretion, the trial court should set aside the entry of default if it "finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act." *BDM, Inc. v. Sageco, Inc.,* 57 Haw. 73, 77, 549 P.2d 1147, 1150 (1976). *See Manley v. Mac Farms, Inc., supra; Hupp v. Accessory Distributors, Inc., supra. Cf., Bassan v. Holzman,* 3 Haw. App. 677, 657 P.2d 1065 (1983).

Nakila contends that the application of the *BDM, Inc. v. Sageco, Inc.* three-pronged test should have resulted in the default entry being set aside. The trial court, therefore, abused its discretion in denying his motion. We disagree.

Nakila argues that after Stehlin became aware of Nakila's claim, she had the onus of citing and joining him as a party defendant in the case. In 1976, however, Nakila was an unknown claimant of an interest in Grant 3057. As such, he was validly served by publication.[10] *Calasa v. Greenwell,* 2 Haw. App. 395, 633 P.2d 553 (1981). After default was entered against unknown defendants, including Nakila, Stehlin had no obligation to cite and join Nakila. Rather, the burden was on Nakila to set aside the entry of default and intervene in the case within a reasonable time after January 21, 1980. He failed to take any action until more than six months later.

Nakila faults Mr. Tashima for having "mistakenly advised him th[a]t he had no valid claim to the lands in question." Nakila's Opening Brief at 11. However, the trial court's concern was whether there was excusable neglect on the part of Nakila or his counsel in not appearing in the case seasonably, and not whether there was legal malpractice. *Cf. Universal*

---

[10] If Nakila was known to be a potential claimant and his address was known, personal service would have been required. *In re Complaint of Vockrodt,* 50 Haw. 201, 436 P.2d 752 (1968).

*Film Exchanges, Inc. v. Lust,* 479 F.2d 573 (4th Cir. 1973); *Brown v. E.W. Bliss Co.,* 72 F.R.D. 198 (D. Md. 1976). Moreover, there is no showing in the record that Mr. Tashima continued as Nakila's counsel after January 21, 1980.[11]

Based on the foregoing facts and circumstances, the trial court properly found that Nakila failed to show excusable neglect on his part.

It is clear from the record that Nakila required a continuance of the scheduled jury trial if his default was to be set aside.[12] It is also clear that while Nakila's motion was being argued, parties and witnesses from the mainland United States and Honolulu, attorneys from Honolulu, and prospective jurors who had been summoned were ready for trial. Thus, the granting of Nakila's motions unquestionably would have prejudiced the parties pecuniarily and otherwise.

Since two of the three requirements of the *BDM, Inc. v. Sageco, Inc.* test were not met, we find no abuse of discretion by the trial court in denying Nakila's motion to set aside the entry of default filed on the morning the jury trial was scheduled to begin. *See Hupp v. Accessory Distributors, Inc., supra.*

## II. DIRECTED VERDICT

In 1868, Kamehameha IV granted the land covered by Grant 3057 in undivided equal shares to 20 individuals. At trial, the 20 shares were identified by numbers 1 through 20 assigned to each of the 20 individuals in the order their names appear in the Grant 3057 document.

Joanna Kaalele (Kaalele), an employee of Title Guaranty of Hawaii, Inc., was Stehlin's witness during the paper title

---

[11] William M. Tam (Tam) of the Legal Aid Society of Hawaii was Nakila's counsel on the motions to set aside default and for continuance.

[12] In the affidavit attached to the motion for continuance, Tam stated that "Mr. Nakila's property interest will be substantially prejudiced if he is required to go to trial without fair and adequate preparation by counsel" and that he required "adequate time to obtain the needed documents and to prepare Mr. Nakila's defense." Record at 909-10.

segment of the trial. She testified that in the chains of title for share 10 (Kapule), share 11 (Keoho), share 14 (Naohule), share 15 (Poealii), share 16 (Pulehu), and share 20 (Kamai), there is a March 17, 1914 deed which conveyed to the grantees named therein:

> The interests of Pulehu, Poealii, Kapule, Keoho, Kamai, and Naohule, the share holders in the Hui Land of Kaumakani, at Kipahulu, Maui, *known as R.P. 1761.*

Exhibit S-32 (emphasis added). Kaalele further testified that subsequent to the March 17, 1914 deed, the chains of title to the six shares are unbroken and end in Stehlin and TNC, respectively.

The Drummonds contend that because Exhibit S-32 conveyed interests in R.P. 1761, rather than Grant 3057, the trial court erred in directing a verdict in favor of Stehlin and TNC on the issue of paper title to shares 10, 11, 14, 15, 16, and 20. We do not agree.

On a motion for a directed verdict,

> . . . the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed and if the evidence and the inferences viewed in that manner are of such character that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, then the motion should be denied and the issue should be submitted to the jury.

*Collins v. Greenstein,* 61 Haw. 26, 38, 595 P.2d 275, 282 (1979) (quoting *Young v. Price,* 47 Haw. 309, 313, 388 P.2d 203, 206 (1963) ); *McKenna v. Volkswagenwerk,* 57 Haw. 460, 558 P.2d 1018 (1977); *Lussier v. Mau-Van Development, Inc. I,* 4 Haw. App. 359, 667 P.2d 804 (1983); *Switzer v. Drezen,* 2 Haw. App. 96, 626 P.2d 202 (1981). However, "[a] verdict may be properly directed for the party with the burden of proof if the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn." *Feliciano v. City & County,* 62 Haw. 88, 93, 611 P.2d 989, 992 (1980). *See also Collins v. Greenstein, supra; Tsugawa v. Reinartz,* 56 Haw. 67, 527 P.2d 1278 (1974); *Deponte v. Ulupalakua Ranch, Ltd.,* 48 Haw. 17, 395 P.2d 273 (1964); *Young v. Price, supra; Carreira*

*v. Territory,* 40 Haw. 513 (1954); *Chung v. Jellings,* 30 Haw 784 (1929).

Kaalele testified that based on her research and that of other employees of her firm, the reference to R.P. 1761 in Exhibit S-32 was erroneous and should have been Grant 3057. She gave the following reasons for her conclusion. First, the land covered by R.P. 1761 is not in Kipahulu but in Hana, while Grant 3057 is in Kipahulu. Second, R.P. 1761 refers to land in Puaaluu and not in Kaumakani, while Grant 3057 refers to land in Kaumakani. Third, R.P. 1761 was a grant to one individual named Nakila, while Grant 3057 was to 20 individuals, Exhibit S-32 refers to "Hui Land," and "hui" means two or more persons. Fourth, the grantor named in Exhibit S-32 had no interest in R.P. 1761. Fifth, the six "share holders" named in Exhibit S-32 had no interest in R.P. 1761, but each of them had a share in Grant 3057. Sixth, when one of the grantees named in Exhibit S-32 subsequently conveyed his interest in 1929, it was described as "[a]ll of my interests in the Kaumakani Hui Land known as *R. P. 3057;* and same being the interests conveyed to me by deed of my father W.K. Keoho *dated March 17, A.D. 1914."* Exhibit S-33 (emphasis added).

The Drummonds did not present any credible evidence to contradict Kaalele's testimony. Moreover, the Drummonds proved their paper title to shares 4, 7, and 8 principally through Kaalele.

We hold that the evidence overwhelmingly established that Stehlin and TNC had paper title to shares 10, 11, 14, 15, 16, and 20 of Grant 3057 and no reasonable inference to the contrary could have been drawn. Consequently, the trial court did not err in directing a verdict on this issue.

### III. EXCLUSION OF WITNESS AND TESTIMONY AND DUPLICATION OF TESTIMONY

#### A.

On the morning the jury trial began, the trial court granted TNC's motion to exclude Joseph Drummond (Joseph) as a witness in the case. The Drummonds claim that this was an abuse of discretion by the court. We cannot agree.

The "Order for a Pre-Trial Statement" filed on February 15, 1980, required each party to serve a pre-trial statement including, *inter alia,* the names and addresses of all witnesses. The order provided that "[f]ailure to do so may result in sanctions." Record at 537. The Drummonds' pre-trial statement filed on August 18, 1980 did not list Joseph as a witness. At the pre-trial conference held on August 29, 1980, the Drummonds still did not disclose that Joseph would be a witness, thus violating Rule 18(a)(1), Rules of the Circuit Courts (RCC) (1981).

We have stated that Rule 18(a)(1) "must be scrupulously followed if we are to have fair trials." *Cafarella v. Char,* 1 Haw. App. 142, 148, 615 P.2d 763, 768 (1980). *See also Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 412 P.2d 669 (1966); *Yorita v. Okumoto,* 3 Haw. App. 148, 643 P.2d 820 (1982); *Boudreau v. General Electric Co.,* 2 Haw. App. 10, 625 P.2d 384 (1981).

The Drummonds claim that their relationship with Joseph had not been friendly, so Joseph's willingness to testify was a late "surprise" to them. However, the record fails to support the Drummonds' claim of "surprise." Although the case had been pending since November 26, 1976, Mildred Drummond did not contact her uncle Joseph until August 18, 1980. After the receipt of Joseph's letter of August 26, 1980, the Drummonds decided to use him as a witness. The Drummonds had ample time to determine whether Joseph would be a willing and useful witness which they failed to do.

We find no abuse of discretion in the trial court's exclusion of Joseph as a witness.

B.

During the adverse possession segment of the trial, defendant Mildred Drummond, a California resident, testified that in 1972 she went to Maui to check on the Grant 3057 land and spoke to several persons in the Kipahulu and Hana areas about the use of the land in the 1920s and 1930s. The trial court sustained the hearsay objection to any testimony by her as to what those persons told her.

The Drummonds argue that the hearsay testimony was

admissible under Rule 803(b)(20), Hawaii Rules of Evidence (HRE) (1981),[13] and its exclusion was reversible error. We hold that Rule 803(b)(20), HRE, was inapplicable.

When the objection was made, the Drummonds' offer of proof was that "this witness can testify about her research in the area and talking to witnesses in the area who have actual knowledge of the use of the land during the time period in question." Transcript at 229. We surmise that Mildred Drummond was going to testify regarding what the "witnesses" told her about the "use of the land."

Rule 803(b)(20), HRE, excepts from the hearsay rule evidence of "[r]eputation in a community . . . as to . . . customs affecting lands in the community." We stress that the rule excepts *reputation* testimony. A reputation is "a number of opinions and individual declarations which have been reduced to a single composite assertion." Note, *Reputation,* 46 Iowa L. Rev. 426 (1961). The testimony must report a general consensus of opinion and not just an assertion of an individual's personal observation. *Id.* at 426. *See also* 5 Wigmore, Evidence § 1584 (Chadbourn rev. 1974).

The proffered evidence here was not reputation testimony, but Mildred Drummond's testimony of what the "witnesses" she talked to told her based on their observation and knowledge. Consequently, the exclusion of the testimony as hearsay was proper.

The Drummonds argue that the testimony was admissible as *kamaaina*[14] *testimony. In re Application of Ashford,* 50

---

[13] Although the effective date of the Hawaii Rules of Evidence (HRE) was January 1, 1981, and not applicable in this case, counsel for the Drummonds claims that the HRE "states the law of this jurisdiction." Drummonds' Opening Brief at 20. We will, therefore, apply the HRE in this case. *See State v. Bloss,* 3 Haw. App. 274, 649 P.2d 1176 (1982).

Rule 803(b)(20), HRE, excepts from the hearsay rule the following:

Reputation concerning boundaries or general history. Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or state or nation in which located.

[14] "Kamaaina" has been defined to indicate "a person familiar from childhood with any locality." *In re Boundaries of Pulehunui,* 4 Haw. 239, 245 (1879).

Haw. 314, 440 P.2d 76 (1968). However, *Ashford* involved *kamaaina witnesses* who proffered *reputation evidence.* Here, Mildred Drummond, who was not a kamaaina, sought to present testimony of what kamaainas told her which cannot be categorized as reputation evidence.

The testimony was properly excluded.

### C.

During the paper title segment of the trial, TNC's counsel by leading cross-examination questions sought to elicit from witness Kaalele testimony regarding shares 10, 11, 14, 15, 16, and 20 which had already been presented on direct examination through Stehlin's counsel. The Drummonds' objection was overruled.

Claiming that Stehlin and TNC represented identical interests in Grant 3057 and thus there was a violation of Rule 17(e)(1), RCC (1981), the Drummonds assert that they "were greatly prejudiced" because "[t]he jury heard the same evidence twice." Drummonds' Opening Brief at 23. The Drummonds misread the rule, but we need not analyze and discuss the rule.

Matters regarding the examination of witnesses are within the discretion of the trial court and its rulings will not be subject to reversal absent prejudicial abuse of such discretion. *Kekua v. Kaiser Foundation Hospital,* 61 Haw. 208, 601 P.2d 364 (1979); *Condron v. Harl,* 46 Haw. 66, 374 P.2d 613 (1962); *Lindeman v. Raynor,* 43 Haw. 299 (1959); *State v. Faulkner,* 1 Haw. App. 651, 624 P.2d 940 (1981). *See also* Rule 611, HRE. Here, the trial court properly directed a verdict on the issue of paper title to the six shares in question. Therefore, even assuming the trial court's ruling was erroneous, there was no prejudice since the issue was never submitted to the jury. *Cf. State v. Nieves,* 1 Haw. App. 586, 623 P.2d 100 (1981); *State v. Gutierrez,* 1 Haw. App. 268, 618 P.2d 315 (1980).

We find no prejudicial abuse of discretion by the trial court.

#### IV. PRESCRIPTIVE EASEMENT

The evidence, viewed in the light most favorable to Hana Ranch, shows that Ulupalakua Ranch, Limited (Ulupalakua),

a predecessor in title of Stehlin and TNC, acquired paper title to nine and a half shares in Grant 3057 in 1929 and to three shares in 1936.[15] Ulupalakua operated a cattle ranch and owned adjacent lands in Kipahulu. R.A. Drummond, the predecessor in title of the Drummonds, acquired paper title to one share in Grant 3057 in 1918 and to two shares in 1928.

Sometime in 1929, Ulupalakua constructed a galvanized 1-inch water pipeline across Grant 3057 and other parcels of land which carried water from Puaaluu Stream to homes in Kipahulu.[16] The pipeline was above ground and had an outlet to serve Grant 3057.

In 1963, Ulupalakua sold its Kipahulu lands, including its interests in Grant 3057, and 2500 head of cattle to Stehlin, who continued the ranch operation as Kipahulu Cattle Company. In 1964, Stehlin replaced the 1-inch water pipeline with a 1½-inch plastic pipeline which was partially underground and partially above ground and continued to carry water to homes in Kipahulu.

In 1969, Stehlin sold to Hana Ranch portions of the Kipahulu lands she had acquired from Ulupalakua, but no part of Grant 3057. As a part of the transaction, commencing on April 1, 1969, Hana Ranch assumed the obligation of maintaining the pipelines and supplying water to homes in Kipahulu.

In 1970, Hana Ranch subdivided a portion of the land purchased from Stehlin into agricultural lots which were sold. In 1971, Hana Ranch installed a 2½-inch water pipeline to serve the agricultural lots. This second pipeline is located underground along the side of the 1½-inch pipeline across Grant 3057.

---

[15] Stehlin acquired three shares by exchange deed (Exhibit S-35) in 1967 and TNC acquired a half share by quitclaim deed (Exhibit S-17b) in 1980.

[16] Joseph Kahalewai, Sr. initially testified that the water pipeline was built "around the 30's." Transcript at 314. On cross-examination, he testified that it was constructed "somewhere in the 20's and 30's." Transcript at 318-19. On redirect, he testified that the pipeline was put in "between the years 1920 and 1930." Transcript at 320. Inasmuch as Ulupalakua initially acquired title to an interest in Grant 3057 in 1929, we have selected that year.

The Drummonds contend that the evidence was insufficient for the jury to find that Hana Ranch had a prescriptive water pipeline easement in gross across Grant 3057 and, consequently, there was error. We concur.

Since the Drummonds filed neither a Rule 50(b), HRCP (1981), motion for a judgment notwithstanding the verdict nor a Rule 59, HRCP (1981), motion for a new trial, our initial inquiry is whether their contention is reviewable on appeal. It is settled that neither a Rule 50(b) motion nor a Rule 59 motion is a condition precedent to appeal from a final judgment. 9 C. Wright & A. Miller, Federal Practice and Procedure: *Civil* § 2540 (1971). *See United States v. Cook,* 432 F.2d 1093 (7th Cir. 1970), *cert. denied,* 401 U.S. 996, 91 S. Ct. 1224, 28 L.Ed.2d 535 (1971); *United States v. Mountain State Fabricating Co.,* 282 F.2d 263 (4th Cir. 1960). Since the Drummonds did move for a directed verdict at the close of the evidence, we hold that the sufficiency of the evidence question is properly before us for review. 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 50.05[1] (2d ed. 1982). *Cf. Warner v. Kewanee Machinery & Conveyor Co.,* 411 F.2d 1060 (6th Cir. 1969), *cert. denied,* 398 U.S. 906, 90 S. Ct. 1685, 26 L.Ed.2d 65 (1970); *United States v. Mountain State Fabricating Co., supra.*

In this jurisdiction, it is settled that the same elements necessary to prove acquisition of title by adverse possession are required to establish an easement by prescription. *Tagami v. Meyer,* 41 Haw. 484 (1956). Succinctly, the requirement is that the use must be adverse, continuous and uninterrupted, and for the prescriptive period. *Id. See also Tanaka v. Mitsunaga,* 43 Haw. 119 (1959); *Lalakea v. Hawaiian Irrigation Co. Ltd.,* 36 Haw. 692 (1944); 2 J. Grimes, *Thompson on Real Property* § 340 (Replacement 1980) (hereinafter "Thompson"); 3 R. Powell, *The Law of Real Property* ¶ 413 (1981). The party claiming the easement has the burden of proving the essential elements giving rise to the prescriptive right. *Tagami v. Meyer, supra. See* 2 Thompson, *supra,* § 340.

First, we deal with the 17 shares or 85% interest in Grant 3057 owned successively by Ulupalakua and Stehlin. As owners of a substantial interest, Ulupalakua and Stehlin had the right to use Grant 3057. It is obvious that they could not have used Grant 3057 adversely against themselves. *See Seltzer*

*Partnership v. Linder,* 2 Haw. App. 663, 639 P.2d 420 (1982). Therefore, the jury could not logically have found that Hana Ranch acquired a prescriptive easement to any part of Grant 3057 through Ulupalakua and Stehlin. Moreover, the use by Hana Ranch from 1969 was by consent of Stehlin and permissive use could not have created an easement by prescription. *Tagami v. Meyer, supra;* 2 Thompson § 345.

Next, we turn to the 3 shares or 15% owned by the Drummonds and their predecessors as cotenants with Ulupalakua and Stehlin successively.

In *Poka v. Holi,* 44 Haw. 464, 357 P.2d 100 (1960), our supreme court implied that cotenants share a general fiduciary relationship and that a cotenant in possession has an obligation to "bring home" to the other cotenants "the knowledge or notice of his adverse claim." *Id.* 44 Haw. at 481, 357 P.2d at 110. In *City & County v. Bennett,* 57 Haw. 195, 552 P.2d 1380 (1976), the court announced the following rule:

[B]ecause of the general fiduciary relationship between cotenants, a tenant in common claiming by adverse possession must prove that he acted in *good faith* towards the cotenants during the statutory period. In most circumstances, this requirement of good faith will in turn mandate that the tenant claiming adversely must *actually notify* his cotenants that he is claiming against them. In the following exceptional circumstances, however, good faith is satisfied by less than actual notice: where the tenant in possession has *no reason to suspect* that a cotenancy exists; or where the tenant in possession makes a *good faith, reasonable effort to notify* the cotenants but is unable to locate them; and where the tenants out of possession already have *actual knowledge* that the tenant in possession is claiming adversely to their interests. In these limited circumstances, the notice requirement will be satisfied by constructive notice and "open and notorious possession".

*Id.* 57 Haw. at 209-10, 552 P.2d at 1390 (emphasis in original) (footnote omitted). *See also In re Keamo,* 3 Haw. App. 360, 650 P.2d 1365 (1982); *Smart v. Luiki,* 3 Haw. App. 34, 640 P.2d 1172 (1982); *Hana Ranch, Inc. v. Kanakaole,* 1 Haw. App. 573, 623 P.2d 885 (1981).

Since the legal requirements pertaining to adverse posses-

sion are applicable in proving a prescriptive easement, and here, cotenants are involved, we hold that the *Bennett* rule applies in this case. Having a fiduciary relationship with R.A. Drummond and his successors in interest, Ulupalakua and Stehlin had an obligation to *actually notify* them that a prescriptive easement adverse to their 15% interest was being claimed. *Cf. Moffat v. Speidel,* 2 Haw. App. 334, 631 P.2d 1205 (1981). The evidence, however, includes no proof of such actual notice.

Furthermore, the evidence is insufficient to show that this case fell into one of the three exceptional circumstances under the *Bennett* rule where good faith could be satisfied by less than actual notice. First, by letter dated June 16, 1930, R.A. Drummond notified Ulupalakua that he owned "3½ [shares] of Grant 3057." Exhibit NC-4. Consequently, Hana Ranch cannot claim that Ulupalakua had "no reason to suspect that a cotenancy exist[ed]." Second, there is no evidence that Ulupalakua or Stehlin made any "good faith, reasonable effort to notify the cotenants but [was] unable to located them." Finally, there also is no evidence in the record that R.A. Drummond and his successors in interest already had "actual knowledge that [Ulupalakua and Stehlin were] claiming adversely to their interests."

We hold that the evidence was insufficient for the jury to find that Hana Ranch had a prescriptive water pipeline easement in gross.[17] Therefore, that portion of the judgment in favor of Hana Ranch is reversed and remanded for a new trial.[18]

---

[17] Assuming that Hana Ranch's use was adverse to the Drummond's 15% interest and was continuous and uninterrupted beginning in 1969, it was not for the prescriptive period of twenty years. *See* HRS § 657-31 (1976). *Cf. Campbell v. Hipawai Corporation,* 3 Haw. App. 11, 639 P.2d 1119 (1982).

[18] Since the Drummonds failed to file a Rule 50(b), HRCP, motion for judgment notwithstanding the verdict, we are precluded from directing entry of judgment in their favor on the prescriptive easement issue. *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 67 S. Ct. 752, 91 L.Ed. 849 (1947); 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 50.12 (2d ed. 1982).

## V. ATTORNEYS' FEES

After the conclusion of the jury trial, TNC moved for an award for reimbursement of costs and attorneys' fees from the Drummonds pursuant to HRS § 668-17 (1976).[19] TNC claimed that costs of $1,583.49 and attorneys' fees of $11,192.50 or a total of $12,775.99 had been incurred. The trial court awarded TNC 15% of such total or $1,916.40 as reimbursement for costs and attorneys' fees.

The Drummonds claim that the trial court improperly awarded TNC the reimbursement for attorneys' fees. We agree for the reason that the award was premature.

Section 668-17 is a part of HRS chapter 668 which deals with partition of real estate. The section gives the judge the discretion of allowing fees to attorneys for any of the parties in a partition proceeding and of apportioning such fees for payment by the parties, "as to the judge shall seem equitable in the light of the services performed and the benefits derived therefrom by the parties."

Here, Stehlin initiated an action to quiet title under HRS chapter 669 and to partition under HRS chapter 668. The judgment being appealed deals only with the quiet title phase of the case. In fact, nothing in substance has been done concerning the partition phase of the case.[20]

We do not believe that the trial court can judiciously exercise its discretion under HRS § 668-17 until after the substantial completion of the partition proceeding. Consequently, we hold that the trial court was premature in its award.

---

[19] The portion of HRS § 668-17 pertinent to this appeal reads:

In addition to costs of the proceeding the judgment may allow any fee or fees for legal services rendered by the attorneys for any of the parties, and apportion the same for costs for payment by and between the parties or any of them, all as to the judge shall seem equitable in the light of the services performed and the benefits derived therefrom by the parties, respectively.

[20] On October 28, 1980, TNC filed a motion for the appointment of a commissioner "to sell, by auction, the property in petition or, in the alternative, to subdivide the property in petition." Record at 1051. On November 28, 1980, the hearing on the motion was continued until moved on.

Although the Drummonds have not complained about the allowance of costs, we note that TNC included a total of $768.26 in transportation expenses in its list of costs. Such expenses are not recoverable as costs. *See Turner v. Willis,* 59 Haw. 319, 582 P.2d 710 (1978); *Smothers v. Renander,* 2 Haw. App. 400, 633 P.2d 556 (1981).

We, therefore, reverse that part of the judgment awarding TNC reimbursement for costs and attorneys' fees.

## VI. CONCLUSION

We affirm the trial court's order denying Nakila's motion to set aside the entry of default.

We affirm the judgment in all particulars, except that:

1. We reverse the part of the judgment declaring that Hana Ranch has an easement in gross by prescription for a water pipeline across Grant 3057 and remand for a new trial on this issue, including the question of overburdening of the easement; and

2. We reverse the part of the judgment awarding to TNC the sum of $1,916.40 as reimbursement for costs and attorneys' fees and remand for reconsideration by the trial court at the proper time as discussed above.

Remanded for further proceedings consistent with this opinion.

*Yuklin Aluli* for claimant-appellant Andrew Nakila.

*Edward C. Kemper* (*Kemper & Watts,* of counsel) for defendants-appellants Mary B. Drummond and Mildred C. Drummond.

*David Waters* (*William C. McCorriston* with him on the briefs; *Goodsill, Anderson, & Quinn,* of counsel) for substituted plaintiff and defendant-appellee The Nature Conservancy.

*William F. Crockett* (*Crockett & Nakamura,* of counsel) for defendant-appellee Hana Ranch, Inc.